IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PAMELA J. LODES | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | NO. 3-04-CV-1160-BD |
| UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER | § § § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Defendant University of Texas Southwestern Medical Center ("UT Southwestern") has filed a motion for summary judgment in this discrimination and retaliation case brought under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq*. For the reasons stated herein, the motion is denied.

I.

Plaintiff Pamela Lodes was employed by UT Southwestern in various capacities from May 22, 1995 until June 6, 2001. (Plf. MSJ App. at 150, ¶ 2). In January 2000, plaintiff requested and obtained intermittent FMLA leave to care for her son who suffers from a bi-polar disorder. (Def. MSJ App. at 29). This became a source of friction between plaintiff and her supervisor, Ellen Heck. (*See* Plf. MSJ App. at 31-32, 71, 141-42). On January 10, 2001, shortly after plaintiff renewed her request for intermittent leave, she filed a complaint against Heck with the UT Southwestern Equal Employment Opportunity ("EEO") office. (Def. MSJ App. at 21, 55). Plaintiff told the EEO investigator, Vernon Mullen, that Heck treated her differently than other employees, that she overheard conversations between Heck and others discussing her FMLA status, and that she had tape

recordings of Heck which proved her hostility.  (*See* Plf. MSJ App. at 34, 39, 62, 118, 137, 148). According to notes taken by Mullen at this meeting, plaintiff admitted that she listened in on telephone conversations between Heck and Jerry Watson, a Human Resources employee, and between Heck and Abby Freeman, Vice President of Human Resources.  (Def. MSJ App. at 65-67).[1] On March 27, 2001, Mullen reported this to Freeman and expressed concern that plaintiff "had engaged in activity that may be illegal and in violation of university policy and procedures."  (*Id.* at 67).  Two days later, Mullen dismissed plaintiff's discrimination complaint against Heck.  (Plf. MSJ App. at 72).  Plaintiff appealed that decision to Freeman on April 3, 2001.  (*Id.* at 119).  The very next day, Heck reprimanded plaintiff for discarding documents she had requested related to her FMLA leave and for exhibiting inappropriate behavior in the office.  (*Id.* at 141-42).  Heck subsequently learned of the tape recordings and, on April 9, 2001, recommended that plaintiff be discharged for this conduct.  (*Id.* at 144).  Plaintiff's termination became effective on June 6, 2001. (*Id.* at 151, ¶ 2).

After exhausting her administrative remedies, including an evidentiary hearing before an appeal board, plaintiff filed suit against defendant on May 27, 2004.  In her most recent pleading, plaintiff alleges that defendant discriminated against her for taking FMLA leave to care for her son and retaliated against her for filing an EEO complaint.[2]  Defendant now moves for summary judgment on the grounds that:  (1) plaintiff cannot establish a *prima facie* case of discrimination or

---

[1] Plaintiff objects to Mullen's notes as hearsay.  However, the notes are admissible to show that Mullen *believed* plaintiff recorded telephone conversations between Heck and other employees, which formed the basis of defendant's termination decision.  *See Business Electronics Corp. v. Sharp Electronics Corp.*, 780 F.2d 1212, 1219 (5th Cir. 1986), *aff'd*, 108 S.Ct. 1515 (1988).  *See also Moore v. Sears, Roebuck and Co.*, 683 F.2d 1321, 1322 (11th Cir. 1982) (district court properly admitted documents prepared by employer "to help establish that [defendant] was motivated, in good faith, to discharge [plaintiff] for reasons other than age").

[2] Plaintiff originally sued for disability discrimination in violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, intentional infliction of emotional distress, and retaliation for taking FMLA leave for a personal illness.  The ADA claim was dismissed by the court on Eleventh Amendment immunity grounds and the other claims were not included by plaintiff in subsequent amended complaints.

retaliation or show that the legitimate explanation offered by defendant for its termination decision was pretextual; and (2) plaintiff's claims are barred by the applicable two-year statute of limitations.[3] The issues have been fully briefed by the parties and the motion is ripe for determination.

II.

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). A fact is "material" if it might reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A party seeking summary judgment who does not have the burden of proof at trial need only point to the absence of a genuine fact issue. *See Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). By contrast, a movant who bears the burden of proof at trial must establish "beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Once the movant meets its initial burden, the non-movant must show that summary judgment is not proper. *See Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 113 S.Ct. 82 (1992). All evidence must be viewed in the light most favorable to the party opposing the motion. *See Rosado v. Deters*, 5 F.3d 119, 122 (5th Cir. 1993).

---

[3] Defendant also moves for summary judgment on the ground that there is no evidence it unlawfully interfered with, restrained, or denied plaintiff any rights under the FMLA. However, plaintiff does not assert a claim under 29 U.S.C. § 2615(a)(1) in her most recent complaint. (*See* Plf. Third Am. Compl. at 2-5, ¶¶ 6-25, 26).

A.

The FMLA gives eligible employees the right to take up to 12 weeks of unpaid leave during any 12 month period "to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). In addition to this prescriptive obligation, the FMLA prohibits an employer from "discharg[ing] or in any other manner discriminat[ing] against any individual for opposing any practice made unlawful by [the Act]." *Id.* § 2615(a)(2). To prove retaliation, a plaintiff must show that: (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) there is a causal link between the protected activity and the action taken by the employer. *See Richardson v. Monitronics International, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005). Once the plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for its decision. *Id.* If the defendant succeeds in doing so, the burden shifts back to the plaintiff to demonstrate that the conduct protected by the FMLA was a "but for" cause of the adverse employment action. *See Mota v. Univ. of Texas Houston Health Science Center*, 261 F.3d 512, 519 (5th Cir. 2001).

A plaintiff may satisfy the final step of this burden-shifting analysis by offering evidence of either pretext or mixed motives. *Richardson*, 434 F.3d at 333-34, *citing Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003) *and Rachid v. Jack in the Box*, 376 F.3d 305 (5th Cir. 2004). Under the pretext alternative, the plaintiff must "offer sufficient evidence to create a genuine issue of material fact . . . that the defendant's reason is not true, but is instead a pretext for [retaliation]." *Rachid*, 376 F.3d at 312. Under the mixed-motives alternative, the plaintiff must prove that "the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected [activity]." *Id.* If the plaintiff elects to proceed under the second alternative and offers sufficient evidence that retaliation was a

motivating factor in the employment decision, the defendant must prove that it would have taken the same action despite any retaliatory animus. *Richardson*, 434 F.3d at 333. This final burden "is effectively that of proving an affirmative defense." *Id.*, *quoting Machinchick v. PB Power, Inc.*, 398 F.3d 345, 355 (5th Cir. 2005).

B.

The court has little difficulty in concluding that plaintiff has established a *prima facie* case of retaliation under the proscriptive provisions of 29 U.S.C. § 2615(a)(2). It is undisputed that plaintiff engaged in protected activity by filing an EEO complaint against her supervisor over an FMLA-related dispute and that she was discharged by defendant. The recommendation to terminate plaintiff was made on April 9, 2001-- just three months after plaintiff complained to the EEO officer and six days after she appealed the dismissal of her complaint. This at least raises a fact issue as to whether there is a causal link between plaintiff's protected activity and her termination. *See Evans v. City of Houston*, 246 F.3d 344, 351 (5th Cir. 2001) (lapse of up to four months between protected activity and termination may establish requisite casual connection); *Juarez-Keith v. U.S. Foodservice, Inc.*, No. 3-02-CV-0090-L, 2005 WL 548074 at *7 (N.D. Tex. Mar. 8, 2005) (same as to seven-month lapse). Having established a *prima facie* case of retaliation, the burden shifts to defendant to articulate a legitimate, non-retaliatory reason for its employment decision. Defendant explains that plaintiff was fired because she violated UT Southwestern policies and employee conduct standards by surreptitiously listening to and recording private telephone conversations. This explanation satisfies defendant's burden of production.

Like most retaliation cases, plaintiff's claim hinges on the final step of the burden-shifting analysis--whether there is evidence of pretext or mixed motives. The court determines that the summary judgment evidence, viewed in the light most favorable to plaintiff, is sufficient to create

a genuine issue of material fact for trial. First, plaintiff denies ever recording any conversations to which she was not a party and maintains that she only overheard calls between Heck and other employees because they were conducted over a speaker phone. (*See* Plf. MSJ App. at 35, 39-40, 151, ¶ 15). Although it is not clear whether plaintiff ever notified defendant of that fact prior to the effective date of her termination, there is at least some evidence to suggest that defendant was aware of plaintiff's position. (*See* Def. MSJ App. at 46, 61).[4] Second, the policy cited by defendant in support of its decision to terminate plaintiff does not even remotely address the unauthorized listening to or recording of private telephone conversations. Instead, employee misconduct is defined under the relevant standards as:

> 10. Failure to cooperate with supervisor or co-worker, impairment of function of work unit, or disruptive conduct;
>
> 11. Disorderly conduct, harassment of other employees (including sexual harassment), or use of abusive language on campus[.]

(*Id.* at 44). It is not clear how plaintiff's conduct violates these standards. Finally, there is an issue as to whether defendant followed its own policies and procedures in terminating plaintiff. The discipline and dismissal policies adopted by UT Southwestern provide, in pertinent part:

> An employee shall be informed of the basis for any proposed disciplinary action resulting in demotion, suspension without pay, or dismissal, and shall have an opportunity to respond before a final decision is made to take the disciplinary action. The predisciplinary hearing serves as an opportunity to avoid mistaken decisions to impose discipline and is not intended to definitively resolve the propriety of the disciplinary action being considered.

---

[4] Plaintiff was hospitalized on April 8, 2001--the day before defendant notified her of its termination decision. In a letter to plaintiff dated May 30, 2001, Heck acknowledged that "you indicated that you have no tapes of my personal calls, and that you would provide additional information when your treatment stabilized." (Def. MSJ App. at 46). It is not clear whether plaintiff furnished any additional information to defendant before her termination became effective on June 6, 2001.

(Plf. MSJ App. at 107, ¶ D(1)).  As part of the predisciplinary hearing process, the University is required to inform the employee of the proposed disciplinary action, the facts upon which the decision is based, the names of any persons who have made statements about the incident, and the content of such statements.  (*Id*. at 108, ¶ E(1)(a)).  In addition, the employee is entitled to relevant documentary materials.  (*Id.* at 108, ¶ E(1)(b)).  According to plaintiff, these procedures were not followed.  (*Id.* at 151, ¶ 16).  An employer's failure to follow its own policies may be probative of discriminatory intent.  *See Richardson*, 434 F.3d at 336.

To the extent plaintiff relies on the mixed motives alternative to show that her protected FMLA activity was a "motivating factor" in the defendant's decision to terminate her, the same evidence supports an inference of retaliation.  It is then incumbent upon defendant, as the party with the burden of proof at trial, to establish "beyond peradventure" that it would have taken the same action despite any retaliatory animus.  *Id*. at 333.  While the court acknowledges that the unauthorized listening to and recording of private conversations may be legitimate grounds for dismissal, summary judgment is not proper absent a specific standard prohibiting such conduct and evidence that defendant failed to following its own predisciplinary hearing policies.  *Cf. id*. at 336 (evidence that plaintiff violated a company attendance policy, which was a key consideration in determining whether an employee was entitled to continued employment, established as a matter of law that defendant would have fired plaintiff with or without retaliatory animus).

### C.

Nor is defendant entitled to summary judgment on its limitations defense.  Under 29 U.S.C. § 2617(c)(1), a claim under the FMLA must be brought "not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought."  However, the limitations period for a willful violation of the statute is three years.  *See* 29 U.S.C. § 2617(c)(2).

To prove a willful violation, plaintiff must show that defendant knowingly or recklessly disregarded the requirements of the FMLA. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 1681, 100 L.Ed.2d. 115 (1988).

Plaintiff filed this action on May 27, 2004-- more than two years after she was terminated. Therefore, her claims are barred by limitations unless she can prove a willful violation of the statute. Although plaintiff does not specifically allege willful conduct on the part of defendant, her current pleading includes a claim for punitive damages based on acts and omissions that were committed with "malice" and "reckless indifference" to her rights under the FMLA.[5] (*See* Plf. Third Am. Compl. at 5-6, ¶¶ 27 & 28). This is sufficient to place the defendant on notice of plaintiff's intent to prove willfulness under section 2617(c)(2). *See, e.g. Perry v. American Airlines, Inc.*, 405 F.Supp.2d 700, 704-05 (E.D. Va. 2005) (where parties disagree whether complaint is sufficient to place defendant on notice of a particular claim, notice pleading standards require that complaint be liberally construed in favor of plaintiff); *Caucci v. Prison Health Services, Inc.*, 153 F.Supp.2d 605, 609 (E.D. Pa. 2001) (allegation that conduct of defendant was "willful, intentional, and in flagrant disregard of the provisions of the FLMA" was sufficient to trigger three-year statute of limitations). *See also Rodriguez v. Ford Motor Co.*, 382 F.Supp.2d 928, 936-37 (E.D. Mich. 2005) (summary judgment not proper where question of fact remained as to whether defendant's conduct was willful and, therefore, whether three-year statute of limitations applied).

---

[5] The FMLA does not provide for the recovery of punitive damages. *See Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1133 n.6 (9th Cir. 2003), *citing* 29 U.S.C. § 2617(a). Nevertheless, this request for relief, together with allegations of malice and reckless indifference, puts defendant on notice of a willful violation of the statute.

## CONCLUSION

Defendant's motion for summary judgment is denied. The court will set this case for trial by separate order.

SO ORDERED.

DATED: April 4, 2006.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE